IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TIMOTHY A. HINKHOUSE,                                    6:11-cv-00313-MA

                 Petitioner,                    OPINION AND ORDER

    v.

STEVE FRANKE,

               Respondent.

CORINNE J. LAI
5895 Jean Road
Lake Oswego, Oregon 97035-5303

    Attorney for Petitioner

ELLEN F. ROSENBLUM
Attorney General
NICK M. KALLSTROM
Assistant Attorney General
Oregon Department of Justice
1162 Court Street NE
Salem Oregon 97301-4096

    Attorneys for Respondent

MARSH, Judge

    Petitioner, an inmate at Two Rivers Correctional Institution, brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, alleging that the state trial court unconstitutionally enhanced his

sentence in violation of state law and the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution.   For the reasons set forth below, the amended petition is DENIED.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 19, 1994, a jury convicted petitioner of ten counts of Attempted Murder, ten counts of Attempted First-Degree Assault, ten counts of Reckless Endangerment, and two counts of First-Degree Sexual Abuse.  Resp.'s Exh. 101.   On direct appeal, the Oregon Court of Appeals adequately summarized the extensive evidence introduced at trial on all counts except the Sexual Abuse charges:

> [Petitioner] learned that he had tested positive for HIV in 1989.  That year, he began a sexual relationship with P.B., who was 15 years old at the time.  At the end of the summer, [petitioner] moved to California, but he returned six months later and renewed his sexual relationship with P.B.   During that relationship, [petitioner] refused to use condoms, saying that he did not like them.  He and P.B. did not discuss HIV. In July 1990, [petitioner] again left.  P.B. asked [petitioner] why he was leaving.  In the course of his explanation, [petitioner] told P.B. that she might want to get tested for HIV.   P.B. was tested and, in August 1990, she learned that she was HIV-positive.  A few months later, [petitioner] called P.B. and said that he wanted to meet with her.  When they met, [petitioner] asked whether she had been tested.   P.B. responded, "[W]ell, you should know my status because you gave it to me."  [Petitioner] did not deny the accusation, but just "brushed it off."
>
> On November 3, 1990, [petitioner] told his probation officer, Bill Carroll, that [petitioner] was HIV-positive.  Carroll immediately advised [petitioner] of the implications of his HIV status, explaining the seriousness of the disease and the manner in which it is transmitted.   Carroll explained that using a condom

limits the risks of transmitting the virus, but he also explained that it would not eliminate the risk entirely. He told [petitioner] that if he passed the virus to another person, "he would be killing someone." Over the next several months, Carroll and [petitioner] continued to have conversations about HIV and the need to take precautions to avoid transmitting the virus. In a telephone conversation in 1991, Carroll again cautioned [petitioner]: "If you infect anyone, that is murder." [Petitioner] said that he understood and agreed that he would take appropriate precautions.

In 1992, [petitioner] was taken into custody on a probation violation. He and Carroll continued their conversations about the danger [petitioner] posed by continuing to engage in sexual relationships. According to Carroll, [petitioner] said that he understood the situation and that "he would cease and desist from any kind of [sexual] activity." Nevertheless, [petitioner] continued to engage in sexual relations with a number of women. When he was taken into custody again for another probation violation later that year, he was heard bragging about his sexual prowess with women, expressing neither concern nor remorse for the people whom he might have exposed to HIV. As a condition of his release, however, he signed a probation agreement that included a commitment not to engage in any unsupervised contact with women without express permission from his parole officer.

In 1993, [petitioner] began several sexual relationships without notifying Carroll. In each case, he refused to use a condom during sex and failed to disclose his HIV status. In May of that year, he began a sexual relationship with P.D. He never used a condom and said nothing about HIV.

In June of 1993, [petitioner] began having sex with L.K. She demanded that [petitioner] use a condom, and he did so for three or four weeks. On one occasion, he promised to use a condom, but then he penetrated her without one, in spite of L.K.'s protests. L.K. and [petitioner] then had a long talk about safe sex, in which [petitioner] told her that he had just ended a long-term relationship, that he had not engaged in any risky behavior since then, and that he had recently tested negative for HIV. [Petitioner] and L.K. resumed their sexual relationship. [Petitioner], however, persisted in failing to use a

condom.  When L.K. expressed concern about his behavior, [petitioner] replied that there was no need to wear condoms, because, if either of them had HIV, the other already had been exposed.  [Petitioner] agreed to be tested for HIV, but never followed through.

After a brief hiatus, [petitioner] and L.K. continued their sexual relationship.  [Petitioner's] sexual behavior became very rough.  He would engage in intercourse so vigorously that L.K. would bleed.  When L.K. complained, [petitioner's] attitude was "very casual," even proud.  [Petitioner] also insisted on engaging in anal intercourse, and, although L.K. said that she was "dead set" against it, [petitioner] attempted anal sex several times.  She complained that, although at times he could be gentle, he was becoming "very rough and very rude," and that he would be "mean and spiteful and try[ ] to be hurtful."  L.K. ended her relationship with [petitioner] in August of 1993.

The following month, [petitioner] began a sexual relationship with R.L.  She suggested that [petitioner] buy condoms, but he told her, "I don't believe in them."  R.L. suggested that [petitioner] might have HIV, but he denied that, saying, "I don't have it, and whoever is telling you is lying."

Throughout 1993, [petitioner] continued to meet with his probation officer on a weekly basis.  During that time they would discuss [petitioner's] HIV status.  At no time did [petitioner] mention P.D., L.K. or R.L.

Around the same time that [petitioner] began seeing R.L., he also began a romantic relationship with M.S. [Petitioner] hopes that he and M.S. will marry someday. M.S. was aware of his HIV status, and [petitioner] always wore condoms when he had sexual intercourse with her.

At trial, Dr. Beers explained that HIV is transmitted through bodily fluids, including semen.  He said that even nontraumatic sexual intercourse is an effective method of transmitting the disease and that more violent sex or anal sex increases the risk of transmission, because of the increased likelihood that tears in tissue break down the body's barriers to the virus.  He explained that a person may be infected after a single sexual exposure.

[Petitioner'] psychologist, Dr. Norman, testified that [petitioner] had a long history of acting out sexually and that he suffered from attention deficit disorder. He opined that [petitioner] understood how HIV is transmitted and that it is a fatal disease. Norman also testified that, although defendant had reportedly threatened in 1991 to "go out and spread" HIV, he did not lend much credence to such threats. According to Norman, defendant simply did not think about the consequences of his behavior.

The state's expert, Dr. Johnson, agreed that [petitioner] suffers from attention deficit disorder. Johnson testified that [petitioner] also suffers from a borderline personality disorder and is antisocial. He recounted that [petitioner] had acknowledged that his parole officer had warned him not to infect other people, and that [petitioner] had responded that "he was going to do whatever he wanted, whenever he wanted." Johnson also thought that it was significant that [petitioner] agreed to use, and in fact used, condoms when having intercourse with a woman for whom he expressed affection, but he did not use condoms with the other women with whom he had sex. . . . In Johnson's opinion, such statements, coupled with [petitioner]'s behavior, showed intentional, deliberate conduct. Particularly in the light of the pattern of systematically recruiting and exploiting multiple partners over a long period of time, Johnson said, he found no evidence to suggest that [petitioner] was acting impulsively or without the intent to harm.

State v. Hinkhouse, 139 Or.App. 446, 448-51, 912 P.2d 921, adhered to as modified by 140 Or.App. 574, rev. denied, 324 Or. 229 (1996).

On the primary offense, Count 1, Attempted Murder, the trial court sentenced petitioner to 130 months imprisonment as an upward durational departure. Resp.'s Exh. 101 at 6. On Counts 2-4, 13, and 21-25, Attempted Murder, the court sentenced petitioner to 72 months imprisonment as an upward durational departure, consecutive

to each other and Count 1. Id. at 7, 12. Thus, the trial court upward durationally departed on all ten counts of Attempted Murder.

On Counts 5-8, 14, and 26-30, Attempted Assault I, the court sentenced petitioner to the presumptive sentence of 40 months imprisonment, concurrent with the sentences previously imposed. Id. at 8, 13. On Counts 9-12, 15, and 31-35, Reckless Endangerment, the court sentenced petitioner to one year in jail on each count, concurrent with the sentences previously imposed. Id. at 9, 14. Finally, on Counts 17 and 18, Sexual Abuse I, the court sentenced petitioner to 36 months imprisonment as a presumptive sentence, consecutive to each other and the sentences previously imposed. Id. at 10-11.

In the Judgment and Conviction, the court listed the following five reasons for the upward departures and consecutive sentences on the Attempted Murder counts, and the consecutive sentences on the Sexual Abuse I counts:

1) Crimes were committed while defendant was on probation;
2) [D]egree of harm was significantly greater than would be typical for such cases;
3) [V]ictim in Counts 17 & 18 [Sexual Abuse I] was especially vulnerable due to her age of 3 years;
4) [Persistent] involvement in similar offenses and repetitive assaults; and
5) [Petitioner] is totally non-rehabilitatable.

Id. at 6-7, 10-12; Resp.'s Exh. 117 at 1365. The sentencing judge referenced each of these reasons at the sentencing hearing. Resp.'s Exh. 117, at 1359-61, 1365.

6 - OPINION AND ORDER

Petitioner appealed, arguing that the evidence presented was insufficient to demonstrate that petitioner had the requisite intent to harm his victims.  On March 6, 1996, the Oregon Court of Appeals affirmed the trial court's denial of the motion for judgment of acquittal.  Hinkhouse, 139 Or.App. at 452-53; Resp.'s Exh. 102.   The Oregon Supreme Court denied review.  State v. Hinkhouse, 324 Or. 229, 925 P.2d 908 (1996).

Petitioner applied for state post-conviction relief on December 15, 1998, but was denied on July 16, 2001 after an evidentiary hearing.  First Amended Pet. at 2-3.  The Oregon Court of Appeals affirmed without opinion on November 26, 2003, and the Oregon Supreme Court denied review on April 7, 2004.  Hinkhouse v. Palmateer, 191 Or.App. 148, 82 P.3d 184 (2003), rev. denied 336 Or. 509 (2004); Resp.'s Exh. 104.

On July 21, 2004, petitioner filed a habeas petition in this court under 28 U.S.C. § 2254.  Resp.'s Exh. 105; No. 3:04-cv-00997-BR (#2).  The court granted petitioner's motion to voluntarily dismiss that action on November 24, 2004.  Resp.'s Exhs. 106-09; No. 3:04-cv-00997-BR (#16).

On December 28, 2004, petitioner filed another petition for post-conviction relief in state court.  First Amended Pet. at 3; Resp.'s Exh. 110.   The trial court denied the petition and the Oregon Court of Appeals summarily affirmed.  Resp.'s Exh. 111.

Meanwhile, on June 24, 2005, petitioner again petitioned this court for a writ of habeas corpus. Resp.'s Exh. 112; No. 6:05-cv-00935-AA (#1). Again, however, petitioner moved to voluntarily dismiss the case, and the court dismissed without prejudice. Resp.'s Exhs. 113-15; No. 6:05-cv-00935-AA (#12).

In his amended petition in this proceeding, petitioner raises one ground for relief. Petitioner claims that he is actually innocent of the sentence, and that it was imposed in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Amended Pet. (#26) at 4. Specifically, petitioner argues that the state trial court cited legally insufficient reasons to upward durationally depart on the ten Attempted Murder counts, and that one of the trial court's stated reasons for the upward departure was factually incorrect. Id. Petitioner admits he did not raise this issue in any prior state or federal proceeding. Id.

Respondent moves to deny habeas relief on the ground that the petition is barred by the statute of limitations in 28 U.S.C. § 2244(d), and is procedurally defaulted.

### DISCUSSION

The parties agree that the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254 was filed outside the one-year statute of limitations in 28 U.S.C. § 2244(d). Additionally, the parties agree that petitioner procedurally defaulted this claim

because he did not raise it in the state proceedings so as to "fairly present" this issue to the appropriate state courts.  See Baldwin v. Reese, 541 U.S. 27, 29 (2004); Casey v. Moore, 386 F.3d 896, 915-16 (9th Cir. 2004).  Finally, petitioner makes no showing of cause and prejudice for the procedural default.  See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Smith v. Baldwin, 510 F.3d 1127, 1139 (9th Cir. 2007).

A procedurally defaulted or statutorily barred claim may nonetheless be considered on the merits if the petitioner "produces sufficient proof of his actual innocence to bring him 'within the narrow class of cases . . . implicating a fundamental miscarriage of justice.'"  Lee v. Lampert, 653 F.3d 929, 937 (9th Cir. 2011) (quoting Schlup v. Delo, 513 U.S. 298, 314-15 (1995)); see also Coleman, 501 U.S. at 750.  "The evidence of innocence must be 'so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'"  Id. at 937-38 (quoting Schlup, 513 U.S. at 316).  Where the petitioner is alleging actual innocence of the crime of conviction, he must show that "'it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  Id. at 938 (quoting Schlup, 513 U.S. at 327).

In addition to actual innocence of the crime of conviction, the "actual innocence" exception has been extended to the capital

sentencing context.    <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339-40 (1992).    In the capital sentencing context, the petitioner must show "by clear and convincing evidence that but for the constitutional error at [the] sentencing hearing, no reasonable juror would have found him eligible for the death penalty." <u>Id.</u> at 350.    "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."    <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998).

Petitioner asks this court to further extend the actual innocence exception to the non-capital sentencing context.    Neither the Supreme Court nor the Ninth Circuit Court of Appeals has extended the actual innocence exception to non-capital sentencing. <u>Fox v. Belleque</u>, No. 3:04-cv-303-ST (#108), 2009 WL 2828679, at *5 (D. Or. Sept. 1, 2009); <u>Hasset v. Belleque</u>, No. 1:06-cv-611-CL (#49), 2008 WL 5046317, at *6 (D. Or. Nov. 21, 2008).    In <u>Dretke v. Haley</u>, the Supreme Court was presented with the question of whether an actual innocence exception existed in the noncapital sentencing context, but expressly declined to address the issue.    541 U.S. 386, 393-94 (2004).

I agree with the cases of this court providing that the actual innocence exception does not apply in the noncapital sentencing context.    <u>See, e.g.</u>, <u>Hasset</u>, 2008 WL 5046317, at *6; <u>Downs v. McGee</u>, No. 3:04-cv-6215-MA (#55), 2006 WL 1582304, at *6 (D. Or. June 1, 2006); <u>see also</u> <u>Wildman v. Johnson</u>, 261 F.3d 832, 842-43

(9th Cir. 2001) (refusing to excuse procedural default of a ground asserting that consecutive sentences were inappropriate under state law because the petitioner "failed to challenge the facts underlying his convictions").

Even if an actual innocence exception applies to the noncapital sentencing context, petitioner cannot establish it here. Petitioner makes two arguments. First, petitioner argues that the trial court cited a legally insufficient number of reasons to enhance his sentence on the ten counts of Attempted Murder. Second, petitioner maintains he is actually innocent of the second reason for departure cited by the sentencing court - the "degree of harm was significantly greater than would be typical for such cases" - because none of the victims relating to the Attempted Murder charges actually contracted HIV.

Petitioner's first argument goes to the legal sufficiency of the reasons cited, not petitioner's factual innocence of the sentence or upward durational departures. Petitioner maintains that the trial judge was required to cite at least ten different substantial and compelling reasons to support the departures on the ten counts. Petitioner argues that the trial judge only cited two reasons justifying the upward durational departure - 1) the crimes

were committed while on probation; and 2) the degree of harm was greater than would be typical.[1]

The question of whether the trial judge cited sufficient reasons to support the upward departures is a question of the legal sufficiency of the sentencing proceedings, not a matter of factual innocence. Thus, even if petitioner were correct that the reasons given were legally insufficient, it would not a basis for petitioner to be "actually innocent" of the sentence because it does not challenge the facts underlying the sentence. See Bousley, 523 U.S. at 623; Wildman, 261 F.3d at 842-43.

Petitioner's second argument also fails to establish actual innocence of the sentence. Petitioner argues that the second reason for the durational upward departure - the degree of harm was significantly greater than would be typical for such cases - was factually incorrect because petitioner's victims never contracted HIV. In support of this argument, petitioner submits affidavits from two of his three victims attesting that they do not have HIV. Pet.'s Exhs. 1, 2. Even if this were sufficient to carry

---

[1] I note that petitioner is incorrect about the number of reasons cited to justify the upward departure. While the sentencing judge directly tied the two reasons noted by petitioner to the upward departure, the judge additionally cited two additional reasons - the repetitive assaults, and petitioner's lack of rehabilitative potential - to justify the concurrent sentences, and explicitly incorporated them into the rationale for the durational departures on the Attempted Murder charges. Resp.'s Exh. 117 at 1360-61, 1365; Resp.'s Exh. 101 at 6-7, 12. Thus, the sentencing judge cited four reasons relevant to the Attempted Murder counts for the durational departures.

12 - OPINION AND ORDER

petitioner's burden of demonstrating actual innocence of the second reason given for upward durational departure,[2] the sentencing court cited three other reasons for departure on the Attempted Murder counts to which petitioner makes no factual challenge.  Thus, this showing cannot establish "actual innocence" of the sentence.

Because petitioner cannot establish actual innocence of the sentence, the untimeliness and procedural default of the sole ground for relief in the petition cannot be excused.

## CONCLUSION

For the foregoing reasons, petitioner's amended petition for a writ of habeas corpus (#26) is DENIED.  Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED. See 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this  *11*  day of March, 2013.

*Malcolm F Marsh*
Malcolm F. Marsh
United States District Judge

---

[2] Notably, petitioner did not produce any evidence relating to L.K.

13 - OPINION AND ORDER